**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| RICO ISAIH HAIRSTON, | : | Case No. 1:22-cv-104 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Susan J. Dlott |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| FRELON SPARKS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER and REPORT AND RECOMMENDATION[1]

This case is before the Court upon Plaintiff's Motion for Sanctions and to Compel Discovery (Doc. #151), Defendants' Memorandum in Opposition (Doc. #153), Plaintiff's Reply (Doc. #155); Plaintiff's Motion to Compel Discovery and for Sanctions (Doc. #154); Defendants' Memorandum in Opposition (Doc. #156), Plaintiff's Reply (Doc. #157), and Plaintiff's Motion for Leave to Supplement Motion to Compel (Doc. #158).

## I.     BACKGROUND

In May 2023, Plaintiff filed a motion to compel discovery ("First Motion") regarding his third and fourth requests for production of documents.  (Doc. #121).  He subsequently filed a motion for an informal discovery teleconference regarding his third, fourth, and fifth requests for production of documents.  (Doc. #138).  The undersigned granted Plaintiff's request for a teleconference and denied Plaintiff's First Motion without prejudice to renewal.  (Doc. #145).

The undersigned held a teleconference with Plaintiff and counsel for Defendants on April 1, 2024.  During the teleconference, the parties discussed several requests from Plaintiff's third,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

fourth, and fifth requests for production of documents. The undersigned ordered Defendants to provide their supplemental responses to Plaintiff within thirty days. *See* Apr. 1, 2024 Minute Entry.

On April 30, 2024, Defendants moved for a twenty-one-day extension of time to provide Plaintiff their supplemental discovery responses. (Doc. #147). The Court granted Defendants' Motion and ordered Defendants to provide their supplemental responses by May 22, 2024. (Doc. #148). Shortly before that deadline, Defendants filed a second Motion for Extension of Time, requesting a fourteen-day extension. (Doc. #149). The Court granted Defendants' Motion and ordered them to provide their supplemental responses by June 5, 2024. (Doc. #150).

On May 28, 2024, Plaintiff filed "Response in Opposition to Defendants['] Second Motion for Extension of Time and Cross Motion to Issue Plaintiff Monetary Sanctions and Compel Discovery."[2] (Doc. #151). In the filing, Plaintiff asserts that Defendants' delay in supplementing their discovery responses has caused "undue delay and prejudice to Plaintiff." *Id.* at 1260. Further, he claimed that "Defendants are in contempt of the Court's Order." *Id.* at 1263. He asks the Court to compel Defendants to produce all of the outstanding discovery and "issue severe sanctions against them for not complying with this Court's Order." *Id.* at 1265.

Almost a month later, on June 20, 2024, Plaintiff filed "Motion to Compel Discovery and for Sanctions against Counsel D. Chadd McKitrick for Perjury … and Request for Sanctions against Defendants." (Doc. #154). Plaintiff asserts that Defendants' supplemental responses were "incomplete and evasive" and that he did not receive several specific documents. *Id.* at 1354.

---

[2] Plaintiff's motions and responses/replies were submitted in all capital letters. Quoted portions of the filings that appear in this Order and Report and Recommendation use lower case letters for better readability. The undersigned has taken care to preserve the original meaning, as best as can be determined.

On June 20, 2024, Plaintiff filed a motion requesting leave to supplement his Third Motion. (Doc. #158). In his Motion, Plaintiff asserts that non-party Warden Cynthia Davis committed perjury in her Declaration and asks that she be held in contempt of Court. *Id.* at 158. He attaches several exhibits, including the Declaration of Cynthia Davis, two emails, his February 23, 2022 Objection to Protective Control Decision, and Defendant Hupka's March 1, 2022 denial of Plaintiff's appeal. (Doc. #s 158-1 – 158-7). Notably, the Declaration of Cynthia Davis is already included in the record. (Doc. #153-1, *PageID* #s 1330-31). Nonetheless, to the extent that Plaintiff seeks to supplement his Third Motion with additional exhibits, the Court **GRANTS** Plaintiff's request. Plaintiff's perjury allegations will be discussed below.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure state that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

If the opposing party fails to produce requested discovery documents, a party may file a motion to compel. Fed. R. Civ. P. 37(a)(1). When filing a motion to compel, the moving party must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Additionally, pursuant to the Local Rules of this Court, the parties must first exhaust "extrajudicial means for resolving their differences" before filing a motion related to discovery. S.D. Ohio Civ. R. 37.1. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2010 U.S. Dist. LEXIS 35585, at *2 (S.D. Ohio Apr. 12, 2010) (McCann King, M.J.) ("The obligation of counsel to meet and confer to resolve differences as to discovery

disputes is a requirement of the Federal Rules of Civil Procedure as well as of the Local Rules of this Court.").

Additionally, "[t]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters.*, 270 F.R.D. 298, 302 (S.D. Ohio Oct. 7, 2010) (McCann King, M.J.) (citation omitted). "While a plaintiff should 'not be denied access to information necessary to establish her claim,' a plaintiff may not be 'permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Johnson v. Gallia Cty. Comm'rs*, No. 2:20-CV-65, 2021 U.S. Dist. LEXIS 34173, at *4 (S.D. Ohio Feb. 24, 2021) (Preston Deavers, M.J.) (quoting *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016)).

## III. DISCUSSION

### A. Plaintiff's Second Motion

Plaintiff's Second Motion—requesting sanctions and an order compelling production—was filed prematurely. Although Plaintiff opposed Defendants' Second Motion for Extension of Time, the Court found that Defendants had shown good cause for their requested extension and ordered them to provide their supplemental discovery responses by June 5, 2024. (Doc. #150). Therefore, when Plaintiff filed his Second Motion on May 28, 2024, Defendants had not failed to comply with the Court's Order. Accordingly, Plaintiff's Second Motion (Doc. #151) is **DENIED**.

### B. Plaintiff's Third Motion

In Plaintiff's Third Motion, he moves to compel production of nine categories of documents from Defendants.[3] (Doc. #154, *PageID* #s 1354-60). However, in Plaintiff's Reply,

---

[3] The nine categories include: (1) the October 26, 2021 order (Bates 147) transferring him from OSP to SOCF; (2) the updated surveillance policy signed by Director Annette Chambers; (3) Documents labeled Bates 4, 83-86, 120-171; (4) the investigation for protective control conducted by Defendant Nolan on December 29, 2022; (5) the full

he indicates that Defendants provided additional documents, and the only discovery that has not

been produced includes: (1) video and body camera footage of the February 15, 2022 assault; (2)

the full unredacted version of the protective control assessment that was approved on August 16,

2018; (3) Defendant Hupka's "complete protective control investigative reports conducted on []

March 1st, 2022 and April 25th, 2022 …"; (4) use of force reports from February 6, 2022 and

February 15, 2022; and (5) email communications between Defendants between October 26, 2021

and April 24, 2022. (Doc. #157, *PageID* #s 1435-36). The undersigned will only address the

outstanding discovery identified in Plaintiff's Reply, as Plaintiff indicated that his other issues

were addressed by Defendants' supplemental production of documents.

### *(1) Video and Body Camera Footage*

Although Plaintiff asserts in his Reply that he has not received the video and body camera

footage of the February 15, 2022 incident (Doc. #157, *PageID* #1436), Plaintiff did not request

such footage in his Third Motion (Doc. #154).[4] "It is well-established that a party cannot raise

new issues in a reply brief; he can only respond to arguments raised for the first time in opposition."

*In re: Firstenergy Corp. Sec. Litig.,* 316 F.Supp.2d 581, 599 (6th Cir. 2004) (citing *United States*

*v. Campbell,* 279 F.3d 392, 401 (6th Cir. 2002) (quoting *United States v. Crozier,* 259 F.3d 503,

517 (6th Cir. 2001))); *See Campbell,* 279 F.3d at 401 ("We have held that 'the appellant cannot

raise new issues in a reply brief; he can only respond to arguments raised for the first time in an

---

unredacted version of the protective control assessment that was approved on August 16, 2018; (6) all evidence gathered by Defendant Hupka in her investigation of Plaintiff's March 1, 2022 appeal; (7) all evidence gathered by Defendant Hupka in her investigation for protective control that she conducted on April 8, 2022; (8) use of force reports from February 6, 2022 and February 15, 2022; and (9) email communications. (Doc. #154, *PageID* #s 1354-60).

[4] In Request 1 of Plaintiff's Third Set of Requests for Production of Documents, Plaintiff requested a copy of the video footage, including any associated body camera footage, from the incident on February 15, 2022. (Doc. #138, *PageID* #1195).

appellee's brief.").   Plaintiff's request is not made in response to Defendants' arguments. Accordingly, Plaintiff request to compel this footage is **DENIED**.[5]

<em>(2)      August 16, 2018 Protective Control Assessment</em>

In Request 1 of Plaintiff's Fourth Set of Requests for Production of Documents, Plaintiff requested a copy of the complete unredacted protective control assessment that was approved on August 16, 2018 with only redactions of the other inmates' names.  (Doc. #138, *PageID* #1203). In response, Defendants objected:  "This discovery request is unduly burdensome and vague. It further contained information that is confidential under R.C. 5120.21.  It further seeks documents that have already been requested, and a response to this request was already provided by Defendants." (Doc. #115, *PageID* #999).  In the April 1, 2024 teleconference, Defendants' counsel reiterated that they had already produced this to Plaintiff with redactions for other inmates' names and references to security threat groups (STG).  The undersigned instructed Defendants to review the redactions to ensure that only other inmates' names and references to STGs were redacted, and then produce the protective control assessment again with limited redactions.

Defendants produced the August 16, 2018 protective control assessment (with redactions) to Plaintiff.  (Doc. #153-1, *PageID* #s 1323-28).  There is no indication that Defendants redacted information outside of other inmates' names and references to STGs.  Accordingly, Plaintiff's request to compel production of the August 16, 2018 protective control assessment is **DENIED**.

---

[5] The undersigned notes that Defendants stated in their response to Plaintiff's Third Set of Requests for Production of Documents that "Video of this incident was not preserved by the institution."  (Doc. #115, *PageID* #998). Additionally, Defendants provided Plaintiff two Declarations of Captain Michael Humphrey.  In the first, he attested that the video of the February 15, 2022 incident was not preserved.  (Doc. #153-1, *PageID* #s 1284-86).  In the second Declaration, Captain Humphrey explained that officers at SOCF began to wear body cameras on February 22, 2022. *Id.* at 1294-95.

(3)     *Defendant Hupka's Investigation Reports*

In Request 3 of Plaintiff's Fourth Set of Requests for Production of Documents, Plaintiff requested a copy of the appeal Karrie Hupka denied on his first request for protective control. (Doc. #138, *PageID* #1205). He indicated that she denied him on March 1, 2022, and April 24, 2022. During the teleconference, Plaintiff indicated that he received a copy of the denial, but not the assessment/investigation. Defendants' counsel stated he did not believe that there is an assessment but that he would check. He further indicated that Defendants had already produced documents from the Protective Control Committee. The undersigned directed Defendants' counsel to inquire if there are other documents and either produce the documents or provide in writing that these documents do not exist.

In Plaintiff's Motion, he asks the Court to compel production of the evidence gathered by Defendant Hupka in her investigation of his March 1, 2022 protective control appeal. (Doc. #154, *PageID* #1359). He also requests Defendant Hupka's investigation for protective control that she conducted on April 8, 2022. *Id.*

In the document denying Plaintiff's appeal for protective control on March 1, 2022, it indicates, "This office has conducted a careful review of the records from the proceedings held by the Protective Control Committee." (Doc. #154-23, *PageID* #1386). There is no suggestion that Defendant Hupka or the Bureau of Classification and Reception (BOCR) reviewed any additional information or conducted a separate investigation of Plaintiff's claims. However, consistent with the undersigned's direction during the teleconference, Defendants are **ORDERED** to either produce the documents reviewed or considered by Defendant Hupka in her denial of Plaintiff's March 1, 2022 appeal (that have not already been produced) or confirm in writing that no other documents responsive to Plaintiff's request exist.

7

To the extent that Plaintiff now seeks records related to the April 8, 2022 denial, Plaintiff's request is denied. In Request 3, Plaintiff did not request records related to the April 8, 2022 denial; he specifically requested records from his *first* request for protective control. Moreover, the undersigned did not order Defendants to produce any records related to that investigation. Therefore, Plaintiff's request for records related to the April 8, 2022 denial is **DENIED**.

(4)     *Use of Force Reports*

In Request 1 of Plaintiff's Fifth Set of Requests for Production of Documents, Plaintiff requested the use of force reports from February 6, 2022, and February 15, 2022, including all investigative findings and statements. (Doc. #138, *PageID* #1207). These are the dates Plaintiff was attacked by other inmates. During the teleconference, Defendants' counsel explained that "use of force" reports are separate from incident reports and stated that there are no "use of force" reports from either date. However, Defendants' counsel indicated that there was an incident report from February 6, 2022, and it was provided to Plaintiff before the preliminary injunction hearing. With regard to the February 15, 2022 attack, Defendants' counsel stated that there is no incident report. Plaintiff questioned the lack of report, noting that he was handcuffed, taken to medical, and then sent to the hole following the incident. The undersigned instructed Defendants to verify whether there was an incident report from the February 15, 2022 incident and then provide in writing that it does not exist.

In Defendants' supplemental response, Defendants' counsel explains that "[a] 'use of force' report and investigation is generated only when a 'use of force' is engaged by correction or institutional staff." (Doc. #153-1, *PageID* #1281). Additionally, he indicated that his office has produced all non-confidential information relating to the incident on February 6, 2022. *Id.* Regarding the February 15, 2022 incident, Defendants' counsel states that although he obtained

the Conduct Reports for the two other inmates involved, those reports are confidential under O.R.C. § 5120.21(F).  However, Defendants produced Plaintiff's RIB History (showing an open case from February 15, 2022) and Plaintiff's medical records.  *Id.* at 1281, 1132-40.  According to Defendants, these records demonstrate that an attack did occur on February 15, 2022.  *Id.* at 1281.

Defendants have produced the non-confidential evidence related to these events. Moreover, Defendants' counsel has stated that there are no "use of force" reports for either incident.  Defendants are not obligated to produce reports that do not exist.  *See Damsi v. Tarpstop, LLC*, No. 3:21-CV-0953, 2023 WL 9186657, at *10 (N.D. Ohio Oct. 19, 2023) (quoting *Solorzano v. Shell Chem. Co.*, No. Civ. A.99-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000)) ("[C]ase law directs that where a party has unequivocally stated it does not possess requested documents, a court should not compel a further response.  This is because a party 'cannot produce what it does not have.'").  Accordingly, Plaintiff's request to compel production of such reports is **DENIED**.

### (5)    *Email Communications*

In Request 2 of Plaintiff's Fifth Set of Requests for Production of Documents, Plaintiff requested all email communications between Defendants concerning his transfer and housing during the period at issue or that are relevant to Plaintiff's claims in this case.  (Doc. #138, *PageID* #1209).  During the teleconference, the undersigned directed Defendants to either produce the requested emails (or a privilege log for the entire period) or provide in writing that there are no responsive emails.

Defendants produced emails Bates stamped 000171-000175 as their response to Plaintiff's request.  (Doc. #153-2, *PageID* #1350).  Further, in compliance with the undersigned's direction, Defendants also provided a Declaration from their counsel, D. Chadd McKitrick, a Declaration

from Brian Nolan, and a Declaration from Warden Cynthia Davis.  (Doc. #153-1, *PageID* #s 1321-22, 1330-31); (Doc. #153-2, *PageID* #s 1352-53).  In Mr. McKitrick's Declaration, he attests that on three separate occasions, he requested that Defendants and Southern Ohio Correctional Facility (SOCF) prison officials search for any email communication—sent or received—related to Plaintiff between October 26, 2021, and April 24, 2022.  (Doc. #153-1, *PageID* #1322).  He was informed that responsive emails sent to and from Defendant Erdos, Davis, Sparks, and Nolan did not exist.  *Id.*  Defendants Hupka and Nolan provided emails that were subsequently provided to Plaintiff.  *Id.*

In Defendant Nolan's Declaration, he states that he performed a search to determine whether any emails responsive to Plaintiff's request exist and "did not find any email communications sent to or from myself pertaining to Plaintiff … during the time period between October 26, 2021, and April 24, 2022, therefore no such documents exist to the best of [his] knowledge."  (Doc. #153-2, *PageID* #1353).  Finally, in her Declaration, Warden Davis attests that she searched for any responsive emails that she sent or received regarding Plaintiff between October 26, 2021, and April 24, 2022, and she did not find any.  (Doc. #153-1, *PageID* #1330).

Plaintiff contends that Defendant Nolan committed perjury by stating that he did not find any emails responsive to Plaintiff's request, pointing to an email from November 2, 2021 as evidence in support.  (Doc. #157, *PageID* #1434); *see* Doc. #158-3.  As Plaintiff correctly notes, Defendant Nolan sent an email regarding Plaintiff on November 2, 2021, to several individuals, including Defendants Oppy and Denney.  *Id.*  Notably, Defendants did provide the email, which is Bates stamped 000175, to Plaintiff in response to his request.  Nonetheless, regardless of whether Defendants produced the email to Plaintiff, Defendant Nolan attested in his Declaration that he performed a search to determine whether any emails responsive to Plaintiff's request exist and

10

"did not find any email communications sent to or from myself pertaining to Plaintiff … during the time period between October 26, 2021, and April 24, 2022, therefore no such documents exist to the best of [his] knowledge." (Doc. #153-2, *PageID* #1353). However, at least one such email exists. (Doc. #158-3). Accordingly, Defendant Nolan is hereby **ORDERED** to conduct a search for all email communications sent to or from Defendants and Warden Davis concerning Plaintiff between October 26, 2021 and April 24, 2022, and file an affidavit, no later than February 28, 2025, which must include (1) the steps he took to search for emails regarding Plaintiff during the relevant time period; (2) the results of such search; and (3) an explanation for the misstatement in his prior Declaration. If Defendant Nolan finds any additional emails, he must produce such emails to Plaintiff on or before February 28, 2025.[6]

In his Motion to Supplement, Plaintiff also accuses Warden Davis of perjuring herself in her Declaration, noting that Defendant Hupka sent an email regarding Plaintiff to Defendant Oppy and Brandi Trelka, who, according to Plaintiff, is the Warden's assistant. (Doc. #158, *PageID* #s 1394-95). However, contrary to Plaintiff's assertions, the email does not establish that Warden Davis committed perjury. In her Declaration, Warden Davis states that she did not find any emails that *she* sent or received regarding Plaintiff during the relevant time period. (Doc. #153-1, *PageID* #1330). As Warden Davis did not send or receive the email from Defendant Hupka, the email does not show that Warden Davis' statement is untrue.

*(6)    December 29, 2022 Investigation for Protective Control*

In Request 6 of Plaintiff's Third Set of Requests for Production of Documents, Plaintiff requests the investigation for protective control by Defendant Nolan on December 29, 2022, to include all findings, recommendations, and evidence submitted to BOCR. (Doc. #138, *PageID*

---

[6] As Plaintiff already possessed Defendant Nolan's November 2, 2021 email, Defendant Nolan is not required to produce a copy of that email.

#1199). In response, Defendants objected and provided the following response: "Plaintiff seeks information relating to a request for placement in protective control that took place beyond the events that are the subject matter of this action, and therefore this information is not relevant nor admissible." (Doc. #115, *PageID* #s 998-99). During the April 1, 2024 teleconference, the undersigned instructed Defendants' counsel to determine whether there was an investigation and provide all the records to Plaintiff or to explain in writing why they could not.

In their supplemental response, Defendants indicate that Plaintiff did not make a written request for placement in protective control in December 2022. (Doc. #153-1, *PageID* #1278). As there must be a request before an investigation begins, Defendants assert that because there was no request, there was also no investigation. *Id.* In support, Defendants provided a Declaration from their counsel, D. Chadd McKitrick, and a Declaration from Brian Nolan. (Doc. #153-1, *PageID* #s 1321-22); (Doc. #153-2, *PageID* #s 1352-53). In his Declaration, Mr. McKitrick attests that he inquired three times with prison officials at SOCF as to whether any documents responsive to Request 6 exists. (Doc. #153-1, *PageID* #s 1321-22). In response to all three of his requests, prison officials informed him that Plaintiff did not make a formal written request to be placed in protective control in December 2022, and as a result, there were no documents that would exist that were responsive to Plaintiff's request. *Id.* In Defendant Nolan's Declaration, he states that he "did not find or observe any request made by Plaintiff … to be placed in a protective control housing unit on or around December 29, 2022." (Doc. #153-2, *PageID* #1352).

In Plaintiff's Third Motion, he asserts that there was an investigation beginning in December 2022, and Defendants subsequently destroyed evidence, as evidenced by seven exhibits. (Doc. #154, *PageID* #s 1355-57). The exhibits Plaintiff attached can be grouped into three

categories: (1) December 21, 2022 Informal Complaint and Appeals; (2) January 12, 2023 Informal Complaint and Appeals; and (3) March 1, 2023 Grievance.

<u>December 21, 2022 Informal Complaint and Appeals</u>

The first exhibit Plaintiff points to is his informal complaint from December 21, 2022, with Defendant Nolan's response. (Doc. #154-2, *PageID* #1364). In Plaintiff's Reply, he explains that he made his request through the informal complaint system because Defendant Oppy told Plaintiff that they would not do any more protective control hearings because they have all been denied. (Doc. #157, *PageID* #1432). In the informal complaint, Plaintiff wrote that he received a letter in the mail on December 13, 2022, with a threat to his life. (Doc. #154-2, *PageID* #1364). He copied the contents of the letter and indicated that he filed the original with the Court. *Id.* At the end of his informal complaint, although somewhat illegible, it appears that Plaintiff wrote, "can you place me in PC[?]" *Id.*

In his December 29, 2022 response, Defendant Nolan, on behalf of Defendant Oppy, wrote, "There has been a Protective Control Hearing conducted; all findings and recommendations have been submitted to the operations support center for the final disposition in accordance with Protective Control Policy 53-CLS-11." (Doc. #154-2, *PageID* #1364).

On December 29, 2022, Plaintiff completed a Notification of Grievance (stamped received on January 4, 2023). (Doc. #154-3, *PageID* #1365). In the grievance, Plaintiff requests placement in protective control and indicates that he did not receive a response to his informal complaint. *Id.* He then reiterates what he wrote in his informal complaint. *Id.* On January 5, 2023, Plaintiff's grievance was denied. (Doc. #154-4, *PageID* #1366). The Disposition of Grievance explains that Plaintiff's "concern is outside the scope of the grievance procedure in accordance with AR 5120-9-31." *Id.*

Plaintiff appealed the denial of his grievance to the Chief Inspector on January 9, 2023. (Doc. #154-5, *PageID* #1367). In his appeal, Plaintiff explains Defendant Nolan's response to his informal complaint, notes that he was never interviewed and never received an appeal form, and asks that the Chief Inspector investigate whether he was denied or approved. *Id.* On February 6, 2023, Assistant Chief Inspector K. Riehle affirmed the decision rendered by the Inspector. (Doc. #154-6, *PageID* #1369).

<u>January 12, 2023 Informal Complaint and Appeals</u>

On January 12, 2023, Plaintiff filed an informal complaint against Defendant Oppy for "destroying an official investigation." (Doc. #154-7, *PageID* #1370). Plaintiff details his prior informal complaint and Defendant Nolan's response. *Id.* He notes that he was not interviewed and did not sign forms. *Id.* Additionally, Plaintiff indicates that when he asked Defendant Oppy if they obtained a copy of the evidence that Plaintiff sent to the Court, Defendant Oppy responded that they were not changing anything or conducting any further hearings. *Id.*

In her response on January 18, 2023, Cynthia Davis indicated that Defendant Denney was looking into Plaintiff's allegations and, if the new evidence could be verified, Defendant Oppy would interview Plaintiff. *Id.* Further, Ms. Davis noted that Plaintiff's status is still pending the first PC investigation. *Id.*

Plaintiff then filed a Notification of Grievance, mirroring his informal complaint, on what appears to be January 20, 2023. (Doc. #154-8, *PageID* #1371). On February 7, 2023, Plaintiff filed an Appeal to the Chief Inspector, again mirroring the allegations in his Informal Complaint. (Doc. #154-9, *PageID* #1372).

Plaintiff also attaches what appears to be a copy of an appeal he sent to Defendant Hupka on February 7, 2023, regarding Defendant Oppy and "demanding" that Defendant Oppy be fired.

(Doc. #154-11, *PageID* #1374); (Doc. #154-12, *PageID* #1375).  In Plaintiff's Motion, he explains that he "submitted a kite through what is called 'hub mail' an appeal to Defendant Karrie Hupka." (Doc. #154, *PageID* #1356).

March 1, 2023 Grievance

Finally, Plaintiff attaches a Notification of Grievance from March 1, 2023.  (Doc. #154-13, *PageID* #1376).  Although the allegations in the Grievance are difficult to read (the text is too light), Plaintiff describes the document as a "Grievance against the Institutional Inspector Kevin Parker for destroying all the evidence Plaintiff has preserved by making copies."  (Doc. #154, *PageID* #1357).

Defendants insist that no new protective control investigation was performed in December 2022.  (Doc. #156, *PageID* #1428).  They explain that had one occurred, Plaintiff would have received a copy of the notice that he made a formal request and copies of the decision.  *Id.* According to Defendants, the only "investigation" that occurred in December 2022 was whether Defendant Denney, the Security Threat Group Coordinator, "could verify the [other inmate's] alleged threat made against Plaintiff through United States mail."  *Id.*  Defendants contend that Plaintiff did not request documents related to a threat investigation and, even if Plaintiff requested them, the results of said investigation would be strictly confidential under O.R.C. § 5120.21(D)(6). *Id.*  Moreover, Defendants assert that Defendant Nolan's and Ms. Davis' responses to Plaintiff's Informal Complaints, when read together, demonstrate that Defendant Nolan and Ms. Davis both refer to the protective control investigations that were conducted earlier in 2022 (that are the subject matter of this case).  (Doc. #156, *PageID* #1427).  Defendants note that an incarcerated person cannot request placement in protective control through the grievance system.  *Id.*

15

Plaintiff acknowledges that he filed an Informal Complaint—instead of a request for protective control—because Defendant Oppy told him they would not be conducting any additional protective control hearings.  (Doc. #157, *PageID* #1432).  Thus, although Plaintiff may have attempted to request protective control through the grievance system, Plaintiff did not properly request placement in protective control in accordance with ODRC policies.  (Doc. #156, *PageID* #1427); *see* Doc. #171-2, *PageID* #s 1808-16 (ODRC Classification/Release of Protective Control (PC) Incarcerated Persons).

Moreover, contrary to Plaintiff's arguments, the exhibits do not show that Defendant Nolan initiated a *new* protective control investigation in December 2022.  As both Plaintiff and Defendants note, Plaintiff was never interviewed and never received any notices regarding the outcome of any investigation.  (Doc. #156, *PageID* #1428); (Doc. #154-5, *PageID* #1367).  Additionally, Defendant Nolan did not say in his response that he was conducting an investigation into Plaintiff's allegations.  (Doc. #154-2, *PageID* #1364).  Instead, Defendant Nolan wrote, "There has been a Protective Control Hearing conducted …." *Id*.  Further, in response to Plaintiff's January 12, 2023 Informal Complaint, Ms. Davis wrote, "Mr. Denney, STG Coordinator, is looking into your allegation.  Per 53-CLS-11 if new evidence can be verified, Mr. Oppy will interview.  Your status is still pending the *first* PC investigation.  You are housed in a safe [and] secure location preventing any danger."  (Doc. #154-7, *PageID* #1370) (emphasis added).  Ms. Davis' response is consistent with Defendants' assertion that Defendant Nolan's response was referencing an earlier request for protective control.  (Doc. #156, *PageID* #1427).  Her response is also consistent with Defendants' statement that Plaintiff's informal complaint led to an investigation by Defendant Denney into whether the alleged threat to Plaintiff could be verified. *Id*. at 1428.  Finally, as Defendants' correctly point out, Plaintiff did not request information related

to Defendant Denney's investigation. In sum, although Defendant Nolan's response to Plaintiff's informal complaint was vague, there is no evidence showing that Defendant Nolan conducted his own protective control investigation. There is likewise no indication that any Defendants destroyed evidence related to this alleged investigation. Accordingly, Plaintiff's request to compel production of documents related to Defendant's Nolan's "investigation" is **DENIED**.

> (7)   Conclusion

In summary, Plaintiff's requests to compel video and body camera footage of the February 15, 2022 assault; the full unredacted version of the protective control assessment that was approved on August 16, 2018; Defendant Hupka's protective control investigative reports conducted on April 25th, 2022; and use of force reports from February 6, 2022 and February 15, 2022, are **DENIED**. However, Plaintiff's request to compel the documents reviewed or considered by Defendants Hupka in her denial of Plaintiff's March 1, 2022 appeal is **GRANTED**. Defendants are **ORDERED** to either produce the documents reviewed or considered by Defendants Hupka in her denial of Plaintiff's March 1, 2022 appeal (that have not already been produced) or confirm in writing that no other documents responsive to Plaintiff's request exist. Additionally, Defendant Nolan is hereby **ORDERED** to conduct a search for all email communications sent to or from Defendants and Warden Davis concerning Plaintiff between October 26, 2021 and April 24, 2022, and file an affidavit, no later than February 28, 2025, which must include (1) the steps he took to search for emails regarding Plaintiff during the relevant time period; (2) the results of such search; and (3) an explanation for the misstatement in his prior Declaration. If Defendant Nolan finds any additional emails, he must produce such emails to Plaintiff on or before February 28, 2025.

Defendants shall file a notice with the Court upon production of the outstanding discovery to Plaintiff. Upon Plaintiff's review of this compelled discovery and affidavit, Plaintiff will have

until **March 14, 2025,** to file a memorandum indicating whether he believes Defendants have complied with this Order.  If Plaintiff believes that Defendants have not complied with this Order, Plaintiff's memorandum must specifically identify (1) the provision(s) in this Order Plaintiff contends Defendants have not complied with and (2) how Defendants have failed to comply with the identified provision(s).  Defendants will then have **14 days from Plaintiff's filing** to respond to the alleged deficiencies.  Absent a separate Court order, further briefing on these discovery issues will not be permitted.  Once the undersigned is satisfied that discovery is complete, a new deadline for dispositive motions will be set.

     **C.**    **Sanctions**

        *i.*  *D. Chadd McKitrick*

In Plaintiff's Third Motion, he also requests sanctions against Defendants' attorney, D. Chadd McKitrick.  Plaintiff asserts that Mr. McKitrick "committed perjury" in his Declaration when, in response to Plaintiff's request for Defendant Nolan's protective control investigation, Mr. McKitrick stated that "no such documents exist …."  (Doc. #154, *PageID* #1355).  Plaintiff's allegations lack merit.

Rule 11 "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002) (citing Fed. R. Civ. P. 11(b)(1)-(3)).  The test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was "reasonable under the circumstances."  *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

A court may not rely on "the wisdom of hindsight" in determining whether the challenged conduct was reasonable under the circumstances; rather, the court must determine what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)). It is required, however, that a party seeking sanctions under Rule 11 must follow a two-step process: "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder*, 109 F.3d at 294. This process, known as the "safe harbor" provision, is an "absolute requirement." *Id.* at 296. The purpose of the safe-harbor provision is "to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending document." *Penn, LLC v. Prosper Business Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (citing Fed. R. Civ. P. 11(c) Advisory Committee Notes (1993 Amendments)).

For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion requesting sanctions (Doc. #154) be **DENIED**. First, Plaintiff offers no indication that he complied with the mandatory safe harbor provision of Rule 11. *See Penn*, 773 F.3d at 767 ("Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion.") (citation omitted).

Further, the Court finds that Mr. McKitrick's Declaration was reasonable under the circumstances. Mr. McKitrick does not attest that "no such documents exist." Instead, he attested that he inquired three times with prison officials at SOCF as to whether any documents responsive to Request for Production 6 exists. (Doc. #153-1, *PageID* #s 1321-22). In response to all three of his requests, prison officials informed him that Plaintiff did not make a formal written request to

be placed in protective control in December 2022, and as a result, "there were no written documentation that would exist that was responsive to [Plaintiff's] Request for Production." *Id.* Plaintiff has not presented any evidence that Mr. McKitrick did not inquire with prison officials on three separate occasions, nor has Plaintiff shown that prison officials responded differently to Mr. McKitrick than set forth in his Declaration. Thus, the evidence does not support Plaintiff's accusation that Mr. McKitrick "committed perjury."

   *ii. Defendants*

Plaintiff also requests sanctions against Defendants in his Third Motion. Specifically, Plaintiff asserts that Defendants' failure to produce an unredacted copy of the August 16, 2018 Protective Control assessment constitutes obstruction of justice and is in violation of the Court's Order. (Doc. #154, *PageID* #1358). Further, Plaintiff generally states that Defendants are "obstructing justice," "delaying the proceedings," and "committing corruption [and] malfeasance[.]"

To the extent that Plaintiff is moving for sanctions under Fed. R. Civ. P. 37(b)(2) for failure to comply with a Court Order, the undersigned **RECOMMENDS** that Plaintiff's request for sanctions be **DENIED**. As explained in more detail above, the undersigned instructed Defendants to review the redactions in the August 16, 2018 Protective Control assessment to ensure that only other inmates' names and references to STGs were redacted, and then produce the protective control assessment again with limited redactions. Defendants produced the August 16, 2018 protective control assessment (with redactions) to Plaintiff. (Doc. #153-1, *PageID* #s 1323-28). There is no indication that Defendants redacted information outside of other inmates' names and references to STGs.

To the extent that Plaintiff requests sanctions for Defendants' alleged obstruction of justice, delay of the proceedings, corruption, and malfeasance, the undersigned **RECOMMENDS** that Plaintiff's request for sanctions be **DENIED**.  Plaintiff has not shown that Defendants have engaged in any such behavior.

### IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's Second Motion (Doc. #151) is **DENIED**;

2.  Plaintiff's Motion for Leave to Supplement Motion To Compel—to the extent that Plaintiff seeks to supplement his Third Motion with exhibits labeled A, B, C, and D—is **GRANTED**;

3.  Plaintiff's Third Motion (Doc. #154) is **GRANTED** in part and **DENIED** in part, as set forth above;

4.  On or before **February 28, 2025**, Defendants are **ORDERED** to either produce the documents reviewed or considered by Defendant Hupka in her denial of Plaintiff's March 1, 2022 appeal (that have not already been produced) or confirm in writing that no other documents responsive to Plaintiff's request exist;

5.  Defendant Nolan is hereby **ORDERED** to conduct a search for all email communications sent to or from Defendants Erdos, Hupka, Sparks, Denney, Oppy, and Warden Davis concerning Plaintiff between October 26, 2021 and April 24, 2022, and file an affidavit, no later than **February 28, 2025**, which must include (1) the steps he took to search for emails regarding Plaintiff during the relevant time period; (2) the results of such search; and (3) an explanation for the misstatement in his prior Declaration.  If Defendant Nolan finds any additional emails, he must produce such emails to Plaintiff on or before **February 28, 2025**; and

6.  Defendants shall file a notice with the Court upon production of the outstanding discovery to Plaintiff.

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's request for sanctions (Doc. #154) against Attorney D. Chadd McKitrick and Defendants be **DENIED.**

January 30, 2025                                              *s/Peter B. Silvain, Jr.*
                                                              Peter B. Silvain, Jr.
                                                              United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).